# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:12cr00010 |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| MATTHEW S. CAIN, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I. Introduction

Defendant Matthew S. Cain was charged by Information with possession of a firearm or dangerous weapon in a federal facility in violation of 18 U.S.C. § 930(a) and failure to secure dangerous ordnance in violation of Ohio Revised Code § 2923.19. During his bench trial, Cain's possession charge was dismissed at the Government's request, and the case proceeded on the charge that Cain failed to secure a dangerous ordnance in violation of §2923.19.

The case is now before the Court upon the evidence presented during trial, Cain's Trial Memorandum and Motion for Judgment of Acquittal Pursuant to Rule 29 of the Federal Rules of Criminal Procedure (Doc. #6), the Government's Response (Doc. #8), Cain's Reply (Doc. #9), and the record as a whole.

Cain maintains that he did not fail to secure a dangerous ordnance in violation of Ohio Rev. Code §2923.19 because the revolver and ammunition at issue do not constitute a "dangerous ordnance" under §2923.19. The Government disagrees, arguing that Cain is guilty of this offense because the revolver and ammunition constitute a "dangerous ordnance" under §2923.19.

## II.    Evidence at Trial

### A.    Background

Cain is the owner and operator of a compressor company that contracted to provide hardware to facilities on Wright-Patterson Air Force Base (WPAFB). On November 30, 2011, he arrived at the designated commercial vehicle gate seeking entrance to WPAFB to deliver an air compressor.[1] In accordance with customary procedure, security personnel stopped him at the gate. The Entry Controller on-duty was Officer John Scott. Staff Sergeant Dale (SSgt Dale) was also present due to an unrelated narcotics matter. He later became involved with Cain's situation upon Officer Scott's request.

There is some dispute between the parties as to the exact sequence of the ensuing events. Yet, the parties' minor factual discrepancies play no significant role in this case

---

[1] The Acquittal Motion states that the gate used by Mr. Cain was Gate 15A. According to trial testimony and the Response, Mr. Cain arrived at Gate 16A. The "Questions" page of the Wright-Patterson Air Force Base website states, "[c]ontractor delivery vehicles must enter Gate 16A, off of State Route 444 in Fairborn." (http://www.wpafb.af.mil/questions/topic.asp?id=832). For the purposes of this decision, this Court will assume that the Acquittal Motion misstated the gate number.

because the outcome of the case hinges on the undisputed facts and on a question of law: Whether the revolver and ammunition at issue constitute a "dangerous ordnance" under Ohio Rev. Code §2923.19. To place this issue in full factual context, the trial testimony of each witness will be described.

### B. Cain's Testimony

Cain testified that when he arrived at the commercial delivery gate, Officer Scott asked him to step out of the vehicle and open all the doors in order for security to conduct an inspection. Upon exiting the truck, Cain remembered that he had concealed his loaded .38 caliber Smith & Wesson revolver (.38 Revolver) in a secure compartment in the vehicle. Cain informed Officer Scott that he was licensed to carry a concealed handgun and that the .38 Revolver was in the truck. Officer Scott told Cain that he could not enter WPAFB while in possession of a firearm and that security personnel could not hold it for him while he made his delivery.

According to Cain, the delivery had to occur by 4:00 p.m. that day. As it was already approximately 3:30 p.m., Cain did not have enough time to make the forty-five minute drive back to his workplace in Clayton, Ohio to drop off the .38 Revolver. He called one of his employees, hoping she could contact someone at WPAFB to inform them of his predicament. But the employee was unsuccessful in reaching anyone. Cain also considered handing the .38 Revolver to a police officer who was conducting a traffic stop nearby, but he ultimately chose not to disturb the officer.

Cain finally decided to leave the .38 Revolver and two boxes of .357 caliber

3

ammunition (the .357 Ammunition) in a wooded area off State Route 444, directly across from Gate 16A. He covered the items with a piece of cardboard, which he found discarded on the roadside.

By the time Cain returned to Gate 16A, SSgt Dale had become interested in the situation. SSgt Dale approached Cain's truck and asked what he had done with the .38 Revolver. Cain openly acknowledged where he had left it. SSgt Dale left Cain at the gate under the supervision of another officer and initiated a search for the .38 Revolver.

According to Cain, SSgt Dale had great difficulty recovering the .38 Revolver and radioed the security personnel at Gate 16A multiple times to say that he was unable to locate it. Cain, who could see SSgt Dale searching in the wooded area, testified that he assisted in locating the .38 Revolver by giving directions to guide SSgt Dale towards its location. Upon recovering the .38 Revolver and the .357 Ammunition, SSgt Dale returned to Gate 16A and placed Cain under arrest.

Cain denies that the .38 Revolver and the .357 Ammunition were placed where they could be easily seen by passersby. He maintains that he left the .38 Revolver and the .357 Ammunition approximately thirty feet away from the road in a wooded area and covered them with a piece of cardboard. Cain also makes the point that the .357 Ammunition are not the correct sized cartridges for the .38 Revolver.[2]

Cain further testified that he was in possession of the .38 Revolver for personal

---

[2] Cain does not dispute that the .38 Revolver was fully loaded, but he points out that the additional boxes of .357 Ammunition could not have been loaded into the .38 Revolver. Cain testified that the .357 Ammunition belonged to his mother's firearm.

4

safety and that he also used it on occasion for sport.

  C. **<u>Other Trial Testimony</u>**

  Officer Scott testified that he was the Entry Controller on-duty at Gate 16A of WPAFB when Cain arrived to make his delivery. In accordance with procedure, Officer Scott took all necessary paperwork from Cain in order to issue a permit authorizing Cain's entry onto the installation. It was during this process that Cain told Officer Scott that he was licensed to carry a concealed weapon and that he was in possession of the .38 Revolver. Officer Scott informed Cain that he could not enter WPAFB with the .38 Revolver. Officer Scott gave Cain two options: take the .38 Revolver home or take it to a secure location.

  After Cain left the gate, Officer Scott and another security officer saw his truck parked approximately one-quarter mile away on State Route 444, adjacent to Gate 16A. Officer Scott saw Cain return to his vehicle and drive on State Route 444 towards Fairborn, Ohio. About five minutes later, Cain returned to Gate 16A. SSgt Dale became involved at this time, and Officer Scott had no further contact with Cain.

  SSgt Dale testified that he approached the vehicle and asked Cain what he had done with the .38 Revolver. Cain openly admitted to leaving it along State Route 444. SSgt Dale asked Cain to wait at the gate under the supervision of another security officer while he went to search for the .38 Revolver. SSgt Dale testified that after driving to the location where Cain's truck had been parked moments earlier, he easily located the .38 Revolver and the .357 Ammunition in approximately one minute.

In contrast to Cain's testimony, SSgt Dale stated that the .38 Revolver and the .357 Ammunition were located in an open area of tall grass approximately eight to ten feet from the road and were only partially covered by a piece of cardboard. It was in a concealed carry holster, fully loaded, unlocked, and the safety was not engaged. SSgt Dale further testified that there are railroad tracks and a public jogging trail providing unobstructed access to the open area where he located the .38 Revolver and the .357 Ammunition.

SSgt Dale cleared the loaded cartridges from the .38 Revolver and returned it to Gate 16A where he placed Cain under arrest. Cain was taken to the station for processing by another officer, as SSgt Dale was accompanied by his narcotics dog and could not have Cain in his vehicle. SSgt Dale drove to the station separately to deliver the .38 Revolver and the .357 Ammunition as evidence.

### III. Standard of Proof, Rule 29, and §2923.19

The Fifth Amendment of the United States Constitution guarantees that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *United States v. Craft*, 495 F.3d 259, 264 (6th Cir. 2007).

Rule 29(a) of the Federal Rules of Criminal Procedure, under which Cain brings

his Motion for Acquittal, provides in part:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.....

As noted at the outset, Cain is charged with failure to secure dangerous ordnance in violation of Ohio Rev. Code § 2923.19, which states:

> (A) No person, in acquiring, possessing, carrying, or using any dangerous ordnance, shall negligently fail to take proper precautions:
>
> > (1) To secure the dangerous ordnance against theft, or against its acquisition or use by any unauthorized or incompetent person;
> >
> > (2) To insure the safety of persons and property.
>
> (B) Whoever violates this section is guilty of failure to secure dangerous ordnance, a misdemeanor of the second degree.

As previously discussed, the dispositive issue in this case is whether or not Cain's .38 Revolver and ammunition constitute a "dangerous ordnance" as used in Ohio Rev. Code §2923.19.

## IV. Discussion

Ohio Revised Code § 2923.11(K) defines "dangerous ordnance" by identifying many items it encompasses, such as, "[a]ny automatic or sawed-off firearm, zip-gun, or ballistic knife" and "[a]ny explosive device or incendiary device …." Ohio principles of statutory construction apply to determining the scope of the phrase "dangerous ordnance."

It is well accepted that the cornerstone of statutory construction and

7

> interpretation is legislative intention. *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 28 O.O. 53, 55, 53 N.E.2d 1021, 1023. In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary."

*State v. Jordan*, 89 Ohio St.3d 488, 491-92, 733 N.E.2d 601, 605 (2000); *see Katz v. Fid. Nat. Title Ins. Co.*, 685 F.3d 588, 596 (6th Cir. 2012)(Ohio law); *see also Cummings v. Husted*, 795 F. Supp. 2d 677, 688 (S.D. Ohio 2011) (Smith, D.J.).

There is no need to interpret the phrase "dangerous ordnance" as used in Ohio Rev. Code §2923.19 because it is defined – without ambiguity – by the items listed in Ohio Revised Code § 2923.11(K). Cain's .38 Revolver is not an automatic weapon; it only fires a single round each time its trigger is pulled.[3] His .38 Revolver is also not modified in any way that it could be considered a "sawed-off firearm, zip gun, or ballistic knife." *Cf. State v. Madison*, 1996 WL 137430 at *1 (Ohio Ct. App. Mar. 27, 1996) (recognizing that the Defendant's "Remington 879 Wingmaster .12 gage shotgun which had both the stock missing and the barrel cutdown" was a sawed-off firearm under Ohio

---

[3] An automatic firearm is defined under Ohio Revised Code § 2923.11(E) as "any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger. 'Automatic firearm' also means any semi-automatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges." Cain's .38 Revolver appears to be a Smith & Wesson, Model 637 Revolver. (www.smith-wesson.com). According to the description of the firearm provided by the Smith & Wesson website, the Model 637 may have single or double action capabilities. Regardless, Cain's .38 Revolver does not fall under § 2923.11(E)'s semi-automatic exception to automatic firearms as it was not designed to fire more than thirty-one cartridges. Furthermore, no evidence was presented at trial to show that the .38 Revolver was specially adapted to fire more than thirty-one cartridges without reloading or that it chambers only .22 caliber short, long, or long-rifle cartridges.

8

Rev. Code §2923.19). And neither Cain's .38 Revolver nor the .357 Ammunition fit within the plain and unambiguous meaning of any remaining categories listed in Ohio Rev. Code § 2923.11(K).

The Government sees things differently. The Government argues that Cain's loaded .38 Revolver is an "explosive device" within the meaning of Ohio Revised Code § 2923.11(K)(2) and should therefore be classified as "dangerous ordnance."

Section 2923.11(K)(2) states that dangerous ordnance includes "[a]ny explosive device or incendiary device." "Explosive device" is defined in Ohio Rev. Code § 2923.11(H) as "any device designed or specially adapted to cause physical harm to persons or property by means of an explosion, and consisting of an explosive substance or agency and a means to detonate it."

The Government argues that because Cain's .38 Revolver was loaded, the ammunition in the cylinder constituted the "explosive substance" and .38 Revolver was the "means to detonate it." (Doc #8 at Page ID #38).

Reading § 2923.11(H) in context with other subsections of 2923.11 dispels all doubt that the phrase "explosive device" does not encompass Cain's loaded .38 Revolver for the reason that it is a "firearm" specifically defined in another subsection – §2923.11(B) – and because the definition of "explosive device" in § 2923.11(H) does not use the term "firearm." Section 2923.11(B) defines the term "firearm," in part, as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any

9

firearm that is inoperable but that can readily be rendered operable." Ohio Rev. Code §2923.11(B)(1). Cain's loaded .38 Revolver (or unloaded for that matter) fits naturally within the unambiguous and plain meaning of §2923.11(B)(1). Because the Ohio legislature specifically and separately defined the term "firearm" and the phrase "explosive device" in a manner that distinguishes these categories of dangerous ordnances, the two categories must remain distinct from each other. Additionally, the Ohio legislature could have easily have included firearms within the definition of "explosive devices" if it intended the phrase to encompass firearms, but it chose not to.

The Government's reliance on the fact that Cain's .38 Revolver was loaded does not provide sufficient basis for crossing it over to the category of an "explosive device" when the Ohio legislature distinguished "firearms" from "explosive devices." Again, because Cain's loaded .38 Revolver fits within the specific definition in § 2923.11(B)(1), its loaded status does not justify also placing it the separate and distinct definition of an "explosive device" unless either (or both) statute contained language justifying such a crossover. Neither §2923.11(B) nor §2923.11(H) contain such language.

Cain also contends that his .38 Revolver is exempt from being categorized as a "dangerous ordnance" in light of Ohio Rev. Code §2923.11(L)(2).

Section 2923.11(L) contains a list of items that do not constitute a "dangerous ordnance." The subsection of particular interest here states:

> "Dangerous ordnance" does not include … [a]ny pistol, rifle, or shotgun, designed or suitable for sporting purposes, including a military weapon as issued or as modified and the ammunition for that weapon,

unless the firearm is an automatic or sawed-off firearm.

Ohio Rev. Code §2923.11(L)(2).

Cain argues that his .38 Revolver is exempt under §2923.11(L)(2) for several reasons: it is a firearm that can be purchased at many firearm retail stores; it was not specifically designed or modified for military use; and it is a weapon generally used for sporting purposes – including target shooting, and it is appropriate for personal defense, which is consistent with Cain's lawful permit to carry it as a concealed firearm.

The Government contends that any firearm can be used for occasional target practice and such use does not transform the weapon into a sporting firearm. The Government further argues that Cain's intent in carrying the .38 Revolver was for protection and not sport and, consequently, it should not be exempt from classification as "dangerous ordnance."

The Government too narrowly views the language of §2923.11(L)(2). The statute is written in broad terms: "[a]ny pistol ... designed or suitable for sporting purposes .... unless the firearm is an automatic or sawed-off firearm" *Id*. (emphasis added). Cain's .38 Revolver is a "pistol," and it is "suitable" for use the "sporting purpose" of target shooting. It was not an automatic firearm or a sawed-off firearm. Although there might well be circumstances when another type of firearm constitutes a "dangerous ordnance" even though it can be occasionally used for target practice, the evidence at trial established beyond a reasonable doubt that Cain used his .38 Revolver for this sporting purpose. And although Cain's intent was generally to use his .38 Revolver for personal

protection, this does not alter its characteristics showing it was suitable for the sporting purpose of target shooting, including its size; its normal, non-modified operation as a pistol that fires only one round each time the trigger is pulled; and its non-sawed-off barrel.[4] Accordingly, the record of this case shows that Cain's .38 Revolver constitutes a firearm within the meaning of Ohio Rev. Code § 2923.11(L)(2) and, therefore, it is not "dangerous ordnance."

The Government maintains that if the charges under Ohio Rev. Code § 2923.19 are not appropriate to encompass Cain's conduct, there is no other law under which charges could have been brought. (Doc. #8 at Page ID #39). This Court declines to comment on what other charges might have brought against Cain because the other possible charges or lack of other possible charges plays no role in determining whether Cain is guilty of violating Ohio Rev. Code §2923.19.

The Government relies on *Sizemore v. Flannery*, 1982 WL 3165 (Ohio Ct. App. 12 Dist. June 23, 1982) and *State v. Allison*, 1975 WL 181798 (Ohio Ct. App. 10 Dist. October 2, 1975), asserting the courts in both cases "determined that the weapons at issue, on their own, constituted a threat sufficient to warrant definition as a 'dangerous ordnance.'" (Doc. #8, PageID at 37). The Courts disagrees.

*Sizemore* addressed whether the defendant, who had given an M1 carbine firearm to the Warren County Prosecutor for inspection during a criminal investigation, was

---

[4] The United States Practical Shooting Association (USPSA) is an organization that engages in practical shooting for sport. USPSA holds national competitions and has a separate division specifically for the use of revolvers. (www.uspsa.org).

12

entitled to have the firearm returned to him after the inspection had concluded. 1982 WL 3165 at *1. If the M1 carbine was an "automatic firearm" as defined under Ohio Revised Code § 2923.11(E), it would in turn also be categorized as "dangerous ordnance" under § 2923.11(K)(1). Such a finding would have barred the defendant from having the weapon returned to him under § 2923.17, which criminalizes the possession of a dangerous ordnance. *Sizemore*, 1982 WL 3165 at *2. The court in *Sizemore* specifically stated that without evidence to show that the firearm was equipped with a clip to hold more than twenty-one cartridges, it did *not* qualify as an automatic weapon.[5] *See id.* Furthermore, there is no discussion in the opinion about the inherent dangers of unloaded weapons or whether and under what circumstances such firearms should be categorized as "dangerous ordnance." The Government's assertion that the court in *Sizemore* found the weapon alone sufficiently threatening to be categorized as "dangerous ordnance" is inaccurate.

The Government also cites *Allison* to support its argument that an unloaded firearm should be considered a "dangerous ordnance." Though *Allison* does address the issue of unloaded firearms, *Allison* is factually distinguishable from the instant case because the firearm in question in *Allison* was not a revolver – it was a sawed-off shotgun. 1975 WL 181798, at *1. The court noted that the definition of "dangerous ordnance" under Ohio Revised Code § 2923.11(K)(1) specifically includes sawed-off

---

[5] At the time *Sizemore* was adjudicated, "automatic firearm" was defined under Ohio Revised Code §2923.11(E) and included "any semi-automatic firearm designed or specifically adapted to fire more than twenty-one cartridges without reloading." This section has since been amended, increasing the number of cartridges to thirty-one.

firearms and that "firearm" as defined by § 2923.11(B)(1) includes unloaded firearms. *See id*. at *2. In contrast, a firearm, such as Cain's .38 Revolver, is not specifically identified under by statute (§ 2923.11(K)(1)) as being a "dangerous ordnance." Instead, the closest mention of firearms similar to Cain's .38 Revolver under the definitions in § 2923.11 appears in § 2923.11(L)(2), which exempts it from being categorized as "dangerous ordnance." For these reasons, the factual distinctions between *Allison* and the instant case render it inapplicable to the matter at hand.

The Government also argues that other definition in §2923.11 support the argument that Cain's loaded .38 Revolver constituted an "explosive device." In support of this, the Government cites to cases where components alone – empty soda bottle, aluminum foil, or a bottle of toilet cleaner – may not be an explosive device but when combined, they constitute an "explosive device." (Doc. #8, PageID at 38)(citing *In re Travis*, 110 Ohio App.3d 684 (1996); *State v. Young*, 2005 WL 1802509 (Ohio Ct. App.). While a combination of certain otherwise harmless components can constitute an "explosive device" as seen in *Travis* and *Young*, neither case involved a loaded revolver or components similar to Cain's .38 Revolver and neither case found that a loaded revolver constituted an "explosive device" under §2923.11(H). Consequently, and for the reasons explained above, *Travis* and *Young* provide no basis for fitting Cain's loaded .38 Revolver into the definition of "explosive device." *Cf. State v. Dommer*, 162 Ohio App.3d 404, 407, 833 N.E.2d 796, 798 (2005) (Defendant not guilty of illegally manufacturing explosive in violation of Ohio Rev. Code §2923.17(B). "We find that the

bottle bomb in this case was not an 'explosive' as defined by [Ohio Rev. Code §] 2923.11(M).").

Accordingly, although Cain used poor judgment and disregarded public safety by leaving a loaded firearm and ammunition near the side of a road, his .38 Revolver and Ammunition did not constitute a "dangerous ordnance" under Ohio Rev. Code § 2923.11(K). Cain, therefore, is not guilty of failing to secure a dangerous ordnance in violation of Ohio Rev. Code §2923.19.

## IT IS THEREFORE ORDERED THAT:

1. Defendant Cain's Motion for Judgment of Acquittal (Doc. #6) is GRANTED; and

2. The case is terminated on the docket of this Court.

December 28, 2012

                                                          s/Sharon L. Ovington
                                                          Sharon L. Ovington
                                                      United States Magistrate Judge